IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00595-CNS-SKC

TREVOR STUART,

    Plaintiff,

v.

PETZL AMERICA, INC.,
PETZL DISTRIBUTION, AND
BIG BANG CORPORATION

    Defendants.

---

**DEFENDANT PETZL AMERICA, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, FAILURE TO STATE A CLAIM**

---

Defendant Petzl America, Inc. ("Petzl America") hereby moves to dismiss the claims brought by Plaintiff Trevor Stuart pursuant to Rule 12(b)(2), or in the alternative, Rule 12(b)(6).

Plaintiff sued the wrong defendant. This is a product liability lawsuit alleging that Petzl America was the manufacturer and seller of the product used by Plaintiff. That is incorrect. Petzl America neither designed, manufactured, distributed, nor sold the product used by Plaintiff. Rather, Plaintiff purchased the product at issue directly from a retailer in Europe. After buying the product from overseas, which Petzl America never touched, Plaintiff was injured in a rock climbing accident in West Virginia while using the product. As Petzl America is not involved in this case, there is no specific (or general) jurisdiction in this Court, and dismissal is warranted.

**Certificate of Conferral** – In spite of being informed of the issues raised in this motion, and despite multiple conferral telephone calls, emails, and letters, Plaintiff's counsel still refuses

1

to dismiss Petzl America and opposes the present motion.

## FACTUAL BACKGROUND

### a. Initial Background

1. This is a product liability lawsuit, in which Plaintiff claims he was injured as a result of a product called a Shunt. (Doc. 12, *passim*.)

2. Plaintiff avers that his Shunt was manufactured and sold by Petzl America. (*E.g.*, *id.* ¶¶ 220, 267; *see also id.*, *passim*.) This, as set forth below, is not true.

### b. Plaintiff Purchased the Shunt Directly from a British Company that Shipped it to Him

3. Plaintiff purchased the Shunt on August 25, 2020, directly from a British Company, Banana Fingers Limited. (Invoice, Ex. 1; *see also* Faulhaber Discl. at 11 ¶ 20 (served 5/18/22), Ex. 2.)

4. Plaintiff purchased the Shunt through Banana Fingers Limited's British website, www.bananafingers.co.uk. (*Id.*; *see also* Adams Aff. ¶ 5, Ex. 3)

5. The invoice for the Shunt and other products Plaintiff purchased explained that "these products are of EU preferential origin." (Ex. 1.)

6. Banana Fingers Limited shipped the Shunt and other products from the United Kingdom directly to Plaintiff in Colorado. (*Id.*; *see also* Ex. 2 at 11 ¶ 20.)

7. Plaintiff while rock climbing (i.e., ascending by climbing) as opposed to rappelling (i.e., descending by rope) suffered injuries in a fall in West Virginia. (Doc. 12 ¶¶ 7, 121-124.) He asserts that his Shunt was defective. (*Id.* ¶ 1.)

  c. **Petzl America Did Not Design, Manufacture, Distribute, or Sell the Shunt at Issue**

8. Petzl America is a Utah Corporation with its principal place of business in West Valley City, Utah. (Ex. 3 ¶ 2.) Petzl America's facilities are located solely in Utah. (*Id.* ¶ 12.)

9. Petzl America, as its name implies, operates in North America, not Europe. (*Id.* ¶ 3.)

10. Petzl America neither designed nor manufactured Plaintiff's Shunt. (*Id.* ¶ 8.) Likewise, Petzl America was not involved in the sale or distribution of Plaintiff's Shunt. (*Id.*)

11. Petzl America has no relationship with Banana Fingers Limited, as Banana Fingers Limited is a British company and Petzl America does not sell products to British companies. (*Id.* ¶¶ 3, 6, 7.)

  d. **Factual Background as to the Breach of Express Warranty Claim**

12. For the Rule 12(b)(6) portion of this motion, the amended complaint alleges that Petzl America breached an express warranty, (Doc. 12 ¶¶ 272-279), specifically, that the Shunt "was not as warranted [as] it is not safe for use as a fall arrestor." (*Id.* ¶ 277.)

13. Petzl America did not provide a warranty to Mr. Stuart because Petzl America did not sell or deliver the product to Mr. Stuart. However, even assuming for the sake of argument that Petzl America warranted the product, the product was not warranted as a "fall arrestor." The language of the express warranty contained in the Instructions for Use ("IFU") portion of the packaging referenced in the amended complaint (*e.g.*, Doc. 12 ¶ 274), states in total:

> **3-year guarantee**
> Against any material or manufacturing defect. <u>Exclusions</u>: normal wear and tear, oxidation, modifications or alterations, incorrect storage, poor maintenance, negligence, <u>uses for which this product is not designed</u>.

3

(IFU at 6, Ex. 4 (emphasis added)); *see also* Ex. 3 ¶ 11 (establishing authenticity of exhibit).)[1]

14. The IFU states repeatedly that the sole use of the Shunt is as a "rappel backup," (Ex. 4 at 1, 4, and 6), and that "[t]his product must not be pushed beyond its limits, nor be used for any purpose other than that for which it is designed." (*Id.* at 6.)

15. The amended complaint concedes, however, that Plaintiff was using the Shunt to stop falls during his climb (i.e., ascend by climbing) when the accident occurred. (Doc. 12 ¶¶ 123-24.) This is completely the opposite of using the Shunt as a rappel backup (i.e., descend by rope). (*Id.* ¶ 120.)

    **e. The Original Complaint, Defendant's Notice, Plaintiff's Counsel's Threats, and the Amended Complaint**

16. This is the second case brought by Plaintiff's counsel against Petzl America in this Court.[2] Shortly after this Court struck the class action allegations in the first case that would

---

[1] Unlike the Rule 12(b)(2) portions of the motion where matters outside the pleadings can be considered, in a normal Rule 12(b)(6) context matters outside the pleadings cannot be considered. However, there is an exception to this Rule 12(b)(6) rule when the complaint references the materials. If a "document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). As the express warranty claim here explicitly references and relies upon this document, it can be properly considered not only in the Rule 12(b)(2) portion of this motion, but also on the Rule 12(b)(6) portion of the motion to dismiss. *Id.*

[2] The first case was the *Faulhaber* case. Unlike this *Stuart* case as described in this motion, every indication thus far in the *Faulhaber* case is that Mr. Faulhaber purchased his Shunt in the United States, and as such it would have been distributed by Petzl America. Thus, under Colorado product liability law, Petzl America as the domestic distributor of a foreign made product would be the proper defendant. C.R.S. § 13-21-402(2); *Garrett v. Beaver Run Ski Enterprises, Inc.*, 702 F. Supp. 265, 267 (D. Colo. 1988) (when foreign manufacturers of products do not do business in Colorado but rather sell their "products to a Utah company that is the sole distributor of [the] products in the United States," there is no jurisdiction over the foreign manufacturers so the American distributor is the proper defendant).

have allegedly included Plaintiff, *see Faulhaber v. Petzl Am., Inc.*, 2023 WL 1993612 at \*\*9-12 (D. Colo. Feb. 14, 2023), Plaintiff's counsel filed the present action against Petzl America on March 7, 2023.  (Doc. 1.)

17.    Shortly after this complaint was filed, undersigned counsel reached out to Plaintiff's counsel to explain that they sued the wrong defendant, that Petzl America had no relationship to this lawsuit, and that the proper defendant would be Banana Fingers Limited.  (3/16/23 Letter, Ex. 5.)  Instead of dismissing Petzl America and adding Banana Fingers Limited, Plaintiff's counsel stated that he would simply add "a conspiracy and CoOCA [sic] count" to create personal jurisdiction over Petzl America, and that they would "increase the violence." (4/6/23 Email, Ex. 6 (highlight added to exhibit).)

18.    Plaintiff then filed an amended complaint with the threatened conspiracy and Colorado Organized Crime Control Act ("COCCA") claims, as well a Lanham Act and false representation claim.  (Doc. 12 ¶¶ 179-218.)  However, Plaintiff provided essentially no new facts in support of these claims.  (*See* Doc. 11-1, ¶¶ 1-178.)  Plaintiff also added two new defendants, (*see* Doc. 12, *passim*), though ironically neither was the entity from whom he actually purchased the product and over whom he has jurisdiction.

## STANDARD OF REVIEW

**Rule 12(b)(2)** – Rule 12(b)(2) provides that a party may assert the defense of "lack of personal jurisdiction" by motion.  F.R.C.P. 12(b)(2).  When a defendant challenges jurisdiction with a Rule 12(b)(2) motion, the plaintiff bears the burden of producing evidence to support jurisdiction.  *Shrader v. Biddinger,* 633 F.3d 1235, 1239 (10th Cir. 2011).  Mere "allegations in the complaint are only taken as true to the extent that they are uncontroverted by defendant's

5

affidavits." *Faber v. Townsend Farms, Inc.,* 54 F. Supp. 3d 1182, 1186 (D. Colo. 2014).

**Rule 12(b)(6)** – Dismissal under Rule 12(b)(6) is appropriate when the complaint fails to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint's "formulaic recitation of a cause of action's elements will not do," and such a recitation is insufficient to avoid dismissal. *Twombly*, 550 U.S. at 545.

## ARGUMENT

The amended complaint must be dismissed because there is no personal jurisdiction over Petzl America. Alternatively, the claims against Petzl America should also be dismissed for failure to state a claim upon which relief can be granted. Each issue is addressed below.

**I.    There is No Personal Jurisdiction Over Petzl America**

There are two, and only two, bases for personal jurisdiction – (i) general jurisdiction (also known as "all-purpose jurisdiction") and (ii) specific jurisdiction (also known as "case-linked jurisdiction"). *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).[3] Here, as addressed in turn below, Plaintiff cannot establish either general jurisdiction or specific jurisdiction over Petzl America. As such, dismissal is mandated. F.R.C.P. 12(b)(2).

**A.    General (i.e., All-Purpose) Jurisdiction Does Not Exist Over Petzl America Because It Is Not Essentially at Home in Colorado**

General jurisdiction exists over an out-of-state corporate defendant where its contacts and affiliations with the forum state "are so 'continuous and systematic' as to render them essentially

---

[3]    Technically, these two bases are part of the first of two steps in a personal jurisdiction analysis. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065–66 (10th Cir. 2007). However, if Plaintiff cannot meet this first step (as is the case here), personal jurisdiction is absent and the Court does not address the second step. *Id.*

at home in the forum State." *Goodyear*, 564 U.S. at 919 (2011) (further citations omitted). A "corporation's place of incorporation and principal place of business" are the paradigm bases for general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Outside of these bases, "only a limited set of affiliations with a forum" will subject a corporation to general jurisdiction – and this will only occur in the "exceptional case." *Id.* at 137 & n.19. Indeed, the blanket exercise of general jurisdiction in every state where a corporation engages in a "substantial, continuous, and systematic course of business" is "unacceptably grasping." *Id*. at 138. Rather, general jurisdiction is present only where the corporation is "essentially at home." *Id.* at 139.

Applying these standards to Petzl America, general jurisdiction is absent. Petzl America is neither incorporated nor headquartered in Colorado. (Ex. 3 ¶ 2; *see also* Doc. 12 ¶ 13.) Rather, Petzl America is a Utah Corporation with its principal place of business in Utah. (Ex. 3 ¶ 2.) It is not essentially at home in Colorado. (*Id.* ¶ 12.) As such, there is no general jurisdiction.

### B. Specific (i.e., Case-Linked) Jurisdiction Does Not Exist Over Petzl America Because This Lawsuit Does Not Arise Out of Its Forum Related Conduct

Where, as here, general jurisdiction is absent, the forum court may still exercise specific jurisdiction over a defendant when the "controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citations omitted). In other words, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Thus, even where the defendant manufactured and sold the product, if a plaintiff purchases the product through an out-of-state sales "representative," there is no personal jurisdiction. *Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 549 (11th Cir. 2019) (the "asserted causes of action did not arise out of th[e defendant's in-state] alleged business activity. … But although [Plaintiff] lived

7

in Florida when he purchased the aircraft, he did not purchase the aircraft through [Defendant]'s Florida sales representative; he went through a Virginia representative.").[4]

Plaintiff's lawsuit – i.e., his use of his Shunt that allegedly resulted in his injuries – does not relate to Petzl America's actions. It is undisputed that Plaintiff purposefully purchased the product from overseas. (Ex. 1.) Petzl America did not sell him the product. Rather, it was a British company that has no relationship to Petzl America who sold Plaintiff the product. (Ex. 3 ¶ 5.) Petzl America had no suit-related conduct when a different company shipped the product at issue to Colorado, that Plaintiff then took to West Virginia, and was then allegedly injured. Petzl America did not design, manufacture, distribute, or sell the Shunt used by Plaintiff. Specific (i.e., case-linked) jurisdiction is absent.

Moreover, it is axiomatic that Colorado product liability lawsuits can only be brought against the manufacturer or seller of the product. A lawsuit falls within a product liability action "regardless of the substantive legal theory or theories upon which the action is brought." C.R.S. § 13-21-401(2). And, the "plaintiff must establish that a particular defendant's product was a substantial contributing cause of his injury." *Merkley v. Pittsburgh Corning Corp.*, 910 P.2d 58, 59 (Colo. App. 1995) (citing *Rupert v. Clayton Brokerage Co.*, 737 P.2d 1106 (Colo. 1987)); *accord Sheeks v. Am. Home Prod. Corp.*, 2004 WL 4056060, at *1 (Colo. Dist. Ct. Oct. 15,

---

[4] Likewise, activities of other parties or third parties do not establish personal jurisdiction. *Rosenberg v. Deutsche Bank AG*, 2012 WL 3744632, at *5 (D. Colo. May 22, 2012), report and recommendation adopted 2012 WL 3744631 (D. Colo. Aug. 28, 2012) ("Plaintiff's claims must arise out of Defendants' forum-related contacts. Plaintiff's claims are based on factual allegations of conduct by non-party subsidiary DB Services NJ and its employees rather than acts of any of the Defendants. Therefore, Defendants' contacts with Colorado, to the extent there are any, are unrelated to the claims in this action."); *see Helicopteros Nacionales*, 466 U.S. at 417 ("unilateral activity of another party or a third person is not an appropriate consideration" for establishing personal jurisdiction).

2004) (as "[t]here is no dispute that the [product] ingested by [Plaintiff] was not manufactured or sold by [Defendant]," there is no claim under Colorado law);[5] *see also Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1282 (10th Cir. 2013) (defendants who "were never in control or possession of the" product at issue cannot be held liable under analogous Oklahoma law). Under well-established law, Petzl America is not liable for a product it neither manufactured nor sold.[6]

---

[5] As an aside, as the amended complaint avers that Colorado law applies to the lawsuit, (*e.g.*, Doc. 12 ¶¶ 220, 253), this motion primarily cites Colorado substantive law.

[6] Plaintiff's counsel admitted that they added the "conspiracy and CoOCA [sic] count[s]" in the amended complaint to try to create jurisdiction. (Ex. 6.) These new claims do not create personal jurisdiction for four separate reasons.
    First, and as described above, as this entire case is a product liability case under Colorado law, *see* C.R.S. § 13-21-401(2); *accord* Doc. 12 ¶ 220 (asserting applicability of C.R.S. § 13-21-401), and the product at issue was not Petzl America's product, Petzl America did not have suit related conduct that would subject it to personal jurisdiction.
    Second, the amended complaint's new conspiracy and COCCA claims do not create personal jurisdiction as they are not adequately pleaded. "In order for *personal jurisdiction* based on a conspiracy theory to exist, the plaintiff must offer more than 'bare allegations' that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy." *Melea*, 511 F.3d at 1069 (emphasis added). The amended complaint does not (and cannot) allege such facts. Indeed, the amended complaint adds no additional actual facts supporting conspiracy and COCCA claims. (*See* Doc. 11-1, ¶¶ 1-178.) The amended complaint is wholly void of the necessary factual predicate – i.e., specifically who, what, when, where, and how – necessary to support these new claims. *See* § II.B., below. After all, the new claims are trying to fit a square peg into a round hole. Product liability claims are strict liability, breach of warranty, negligence, and misrepresentation – not conspiracy, COCCA, and the other improperly pleaded claims. *See* C.J.I-Civ §§ 14:1 to 14:24.
    Third, Courts look to whether the "injury related to the conspiracy occurred in Colorado," *Melea*, 511 F.3d at 1070, but here the Plaintiff's injury occurred in West Virginia. (Doc. 12 ¶¶ 121-124.)
    Fourth, "[w]hile a co-conspirator's presence within the forum might reasonably create the 'minimum contacts' with the forum necessary to exercise jurisdiction over another co-conspirator" if various criteria are met, *Melea*, 511 F.3d at 1070, here, none of the defendants in this case were present or based in Colorado. (Ex. 3 ¶¶ 13-15.) Where "none of the Defendants are residents of or present in Colorado," conspiracy allegations do not create personal jurisdiction. *WTI Partners v. Ahn*, 2019 WL 1317761, at *9 (D. Colo. Mar. 22, 2019).)

**II.     In the Alternative, the Amended Complaint Fails to State a Claim Upon Which Relief Can be Granted**

As set forth above, there is no personal jurisdiction over Petzl America and therefore this lawsuit should be dismissed under Rule 12(b)(2). As set forth initially below, the case should likewise be dismissed as to Petzl America as Plaintiff sued the wrong defendant. And in any event, even if Petzl America manufactured or sold the Shunt at issue, which it did not, many of the individual claims still fail under Rule 12(b)(6) as set forth below.

**A.  The Entire Case Should Be Dismissed as Plaintiff Sued the Wrong Party**

As discussed above, Plaintiff sued the wrong party. Under Colorado law, the "plaintiff must establish that a particular defendant's product was a substantial contributing cause of his injury." *Merkley*, 910 P.2d at 59. Where a plaintiff sues the wrong defendant and does not fix the error, a motion to dismiss is proper. *Barrett v. Qual-Med, Inc.*, 153 F.R.D. 653, 655 (D. Colo. 1994) ("the issue [of the Plaintiff suing the wrong defendant] should be promptly and clearly raised by a timely motion to dismiss."). Here, as Plaintiff has sued the wrong defendant, and not cured the deficiency, dismissal is proper. *Id.*; *accord* § I, above.

**B.  The New Claims (First, Second, Third, and Fourth) Fail as a Matter of Law**

After being informed that Petzl America was not involved with Plaintiff's Shunt, instead of dismissing Petzl America, Plaintiff added four new claims against Petzl America. (*Compare* Doc. 1, *with* Doc. 12.) Plaintiff's counsel never asserted claims like these in their *Faulhaber* original complaint, their *Faulhaber* amended complaint, or the original complaint here. Plaintiff's counsel added these claims for the alleged purpose of creating jurisdiction, (Ex. 6), and the new complaint lacks any material factual predicate for these claims. (*See* Doc. 11-1, ¶¶

1-178.)[7]

Three of the four claims (Lanham Act, civil conspiracy, and COCCA) all rely in part or in whole upon a new allegation (that is entirely made up) that the Shunt was manufactured in Malaysia.  (Doc. 12 ¶¶ 196-198, 202, 204, 207, 210, 217; *but see* Ex. 3 ¶ 16 (the Shunt is manufactured in France, not Malaysia).)  Regardless, and even if this false allegation were true, as addressed below, each claim fails as the cause of action is inapplicable or specific facts are not sufficiently pleaded.

### 1. The False Representation Claim (First Claim) is Not Pleaded with Particularity, and is Contrary to this Court's Prior Order

The amended complaint fails to plead the "who, what, when, where and how of the alleged fraud" as well as "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *U.S. ex rel. Sikkenga*, 472 F.3d at 727.  Rather it is filled with generic statements of largely unidentified people and entities, without specific dates, without locations, and without details.  (Doc. 12, *passim*.)[8]

---

[7]   These new claims all needed to be pleaded with particularity.  F.R.C.P. 9(b); *accord Est. of Bogue v. Adams*, 405 F. Supp. 3d 929, 941 (D. Colo. 2019) (Rule 9(b) applies to claims of false statements, COCCA, and conspiracy); *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120-21 (D. Colo. 2011) (a "plaintiff must meet the heightened pleading requirements pursuant to Rule 9(b) to prove a deceptive or unfair trade practice.").

  "Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.  *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019) (citations and internal quotation marks omitted).

[8]   Indeed, the amended complaint frequently uses, among many other unclear statements, the generic label "Petzl Expert."  It does not identify these entities – a frustration already raised by this Court.  *See Faulhaber*, 2023 WL 1993612, at *6 n. 5.  The amended complaint at one

11

Plaintiff's counsel brought a similar claim against Petzl America in the *Faulhaber* action, this Court rejected. In a complaint with nearly identical factual allegations, with regards to fraudulent misrepresentation, the Court found Plaintiff's counsel "failed to allege sufficient factual content to satisfy" Rule 9(b). *Faulhaber*, 2023 WL 1993612, at *6. In spite of the Court's ruling, Plaintiff's counsel bring essentially the same claim again.

### 2. The Lanham Act Claim (Second Claim) Fails as There is No Consumer Private Right of Action

Plaintiff's sole federal claim, a claim for false designation under 15 U.S.C. § 1125 (i.e., § 43) of the Lanham Act, (Doc. 12 ¶¶ 189-199), fails as the Lanham Act does not create a consumer private right of action for false advertising. *E.g., Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) ("A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act—a conclusion reached by every Circuit to consider the question."); *accord Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995) (holding that consumers who alleged neither commercial injury nor competitive injury did not have standing to bring Lanham Act false advertising action against manufacturer). Plaintiff's alleged claim for false designation under the Colorado Consumer Protection Act ("CCPA") likewise fails because false designation of origin is not a separate cause of action; rather, it is a specific type of deceptive trade practice. C.R.S. § 6-1-105(1)(d). And Plaintiff fails to plead the essential elements of a CCPA claim. *Compare* Doc. 12 ¶¶ 189–99, *with Electrology Lab., Inc. v. Kunze*, 169 F. Supp.

---

point states that Plaintiff purchased the Shunt "from one of Petzl's Experts." This, like much of the amended complaint, makes no sense. Plaintiff purchased the Shunt from the British Company Banana Fingers Limited, (Ex. 1; Ex. 2), and Petzl America has no relationship with Banana Fingers Limited. (Ex. 3 ¶¶ 5-7.)

3d 1119, 1162 (D. Colo. 2016).

### 3. The Civil Conspiracy Claim (Third Claim) Fails to Allege the Necessary Specific Facts

To plead a civil conspiracy, the plaintiff must "allege specific facts showing an agreement and concerted action amongst the defendants," as well as identify "the alleged participants in the alleged conspiracy [and] the manner in which the conspiracy operated." *Montgomery v. City of Ardmore*, 365 F.3d 926, 940 (10th Cir. 2004) (internal citations and quotation marks omitted); *Brody v. Bruner*, 2021 WL 4264055, at *2 (D. Colo. Sept. 20, 2021) (a civil conspiracy claim requires the plaintiff to "'allege *specific facts* showing agreement and concerted action among the defendants.'") (further citations omitted, emphasis in original).

The amended complaint does not allege with any specificity an agreement. (Doc. 12, *passim*.) It does not allege any specific facts of any concerted actions of the defendants. (*Id.*) It does not allege any details of a meeting of the minds between defendants. (*Id.*) It is nothing more than conclusory allegations. Simply, the amended complaint does not (and cannot) allege any (let alone all) of the factual underpinnings of a civil conspiracy.

### 4. The COCCA Claim (Fourth Claim) Fails to Plead with Factual Details Any of the Elements

Plaintiff fails to plead a COCCA claim as a matter of law because he failed to plead any of the essential elements of the claim. Plaintiff does not plead factual details of any violation of C.R.S. § 18-17-104. *E.g., Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1141 (D. Colo. 2013) ("A COCCA conspiracy claim requires that the plaintiff first allege an independent violation of § 18–17–104(1), (2), or (3). If the [plaintiffs] have no viable claim under § 18–17–104(3), then [the COCCA] conspiracy claim must fail as a matter of law."). Plaintiff does not plead any facts

13

on how the COCCA offense proximately caused his injuries. *Id.* at 1140 (the COCCA and RICO "offense" must "proximately cause" the plaintiff's injuries). Plaintiff does not plead a "pattern" or an "enterprise," let alone any factual details in support. *Id.* at 1137-38 (plaintiffs must plead defendants "plausibly participated in the affairs of an 'enterprise through a pattern'"). And, Plaintiff does not plead details of the alleged racketeering activities. *See id.* at 1137; C.R.S. § 18-17-103(5) (defining "racketeering activity"). The amended complaint simply lacks the necessary detailed factual predicate to support this claim, which is hardly surprising as this is a product liability case, not an organized crime case.

### C. The Express Warranty Claim (Twelfth Claim) Fails As It Is Contrary to the Contractual Language of the Express Warranty

Plaintiff's express warranty fails for three independent reasons. First, an express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer … creates an express warranty that the goods shall conform to the affirmation or promise." C.R.S. § 4-2-313(1)(a); *see also* C.J.I.-Civ. §§ 14:8, 14:9. The amended complaint alleges that the Shunt "was not as warranted [as] it is not safe for use as a fall arrestor," (Doc. 12 ¶ 277), and Plaintiff was using the Shunt to stop falls while climbing. (*Id.* ¶¶ 123-24.) However, the IFU containing the express warranty states the opposite. The IFU referenced in the amended complaint states repeatedly that the use of the Shunt is as a "rappel backup," i.e., not as a fall arrestor for climbing but as a backup for descending. (Ex. 4 at 1, 4, 6; *see also GFF Corp.*, 130 F.3d at 1384 (central document to the claim referenced in complaint can be considered in a Rule 12(b)(6) motion). As such, the express warranty alleged to be breached did not provide the warranty alleged, negating an express warranty claim.

Second, the express warranty was only for "any material or manufacturing defect." (Ex.

4 at 6.) A "manufacturing defect" means that the product was not manufactured in accordance with the manufacturer's specifications. *Oja v. Howmedica, Inc.*, 111 F.3d 782, 792 (10th Cir. 1997). This is different than the other two types of defects – design defect (where the product was allegedly improperly designed) and failure to warn (where the product allegedly did not have warnings). *Id.* The amended complaint does not (and cannot) allege that the Shunt was not manufactured in accordance with the defendants' specifications. (*See* Doc. 12, *passim*.) Rather, it alleges only design and warning defects. (*Id.*)

Third, express warranties can be limited and can contain exclusions. C.R.S. § 4-2-316(1); *see also* C.J.I.-Civ § 14:8 n. 4. Here, the warranty expressly excluded "uses for which this product was not designed." (Ex. 4 at 6.) And, as addressed above, the IFU only permitted one use for sporting activities for the Shunt – as a rappel back-up device – i.e., not for climbing/ascending. (*Id.*, *passim*.) As the amended complaint concedes that Plaintiff was using the Shunt for climbing/ascending and not as a rappel/descending back-up, (Doc. 12, *passim*), this incident falls within the express exclusion of the warranty. Thus, the express warranty claim must be dismissed.

## CONCLUSION

Plaintiff sued the wrong defendant. He chose to purchase the product at issue directly from overseas. He did not buy the product from Petzl America, and Petzl America was not in the chain of distribution for his product in any way. Both general and specific jurisdiction are absent, and this case as to Petzl America should be dismissed with prejudice.

15

Respectfully submitted this 24th day of April 2023.

CHILDS MCCUNE LLC

*/s/ Jordan Lipp*
Jordan Lipp
821 17th Street, Suite 500
Denver, CO  80202
Telephone: (303) 296-7300
Facsimile: (720) 625-3637
Email:  jlipp@childsmccune.com

*Attorneys for Defendant Petzl America, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 24th day of April 2022, the foregoing **DEFENDANT PETZL AMERICA, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, FAILURE TO STATE A CLAIM** was filed electronically with the Clerk of Court to the ECF system, with service upon the following:

Joseph A. O'Keefe
Scott D. McLeod
McLeod │Brunger PLLC
10375 Park Meadows Drive, St. 260
Lone Tree, CO 80124
*jokeefe@mcleodbrunger.com*
*smcleod@mcleodbrunger.com*

*/s/ Becky Pryor*
Becky Pryor