IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 1:23-cv-00595-CNS- SKC
**TREVOR STUART,**
Plaintiff,

vs.

**PETZL AMERICA, INC.,
PETZL DISTRIBUTION, AND
BIG BANG CORPORATION**
Defendants.

___

### PLAINTIFF'S RESPONSE TO PETZL AMERICA, INC.'S MOTION TO DISMISS [1]
___

Trevor Stuart, through his counsel, Scott D. McLeod and Joseph A. O'Keefe of M<sup>c</sup>Leod│Brunger PLLC, opposes Petzl America, Inc.'s ("Petzl") Motion to Dismiss (Doc. No. 16):

### I. INTRODUCTION

Petzl is a family business operating around the globe through a web of closely held entities, each controlled by Paul Petzl, including Petzl America, Inc. This is not new, and Petzl advertises it on their website as cited both herein and in the Related Case of *Faulhaber v. Petzl America, Inc.*, 22-cv-00102-GPG-SKC, which this Court (until recently) also presided over. Petzl Distribution is alleged to also be a distributor of Petzl's products, as is Petzl America, Inc., while Big Bang appears to be the global head directing the operation. There appears little doubt that Petzl is Petzl, they are all interrelated, they are all owned and controlled by Paul Petzl, and they all intentionally manufactured and placed the Petzl Shunt into the stream of interstate and Colorado commerce through a network of retailers such as REI, Backcountry, and Banana Fingers. For example, a simple Google search for the "petzl shunt" for sale in Colorado, which Petzl likely pays for via *ad*

___

[1] In his First Claim for Relief at ¶¶ 209-218, Plaintiff cites both the Lanham Act and the Colorado CCPA in support of his False Designation Claim. Plaintiff voluntarily withdraws any claim under the Lanham Act. Plaintiff's claims under CCPA remain.

*words* and *sponsored ads*, yields the following results on May 15, 2023, also providing links to Petzl's website linked to the Petzl Defendants, including Petzl America, Inc.:



Here, the three named Petzl Defendants are all *the manufacturer* of the Petzl Shunt as defined by C.R.S. § 13-21-401(1) and a seller of the Petzl Shunt as defined by C.R.S. § 13-21-401(3). Each is intentionally doing business in Colorado as is easily illustrated above. They are also clearly purchasing ad words which support the e-commerce marketing and use of the Petzl Shunt for "top rope solo" as is also clearly seen above. This is also consistent with this Court's observation when it presided over the Related *Faulhaber* case that Petzl America, Inc. does not dispute that it is alleged to be "the manufacturer" of the Petzl Shunt. *See* Related Case (ECF # 55 at n.3). Clearly, these Defendants are *the* manufacturer and a seller under Colorado law, and Plaintiff plausibly alleges it too.

Petzl once *again* comes before the Court on a disfavored motion to dismiss arguing jurisdictional issues that should not exist. This case arises from the defective design, manufacture, and failure to warn that the Petzl Shunt – an aluminum device that Petzl intended, designed,

2

manufactured, marketed, and sold as a fall arrestor – can and does detach from a climbing safety rope without warning while used for its intended and foreseeable purpose.  *See e.g.* Amended Complaint (Doc. No. 12) at ¶ 1.  The Defendants each conduct business as "Petzl" in Colorado and profit from the design, manufacture, marketing, and sale of their products, including the Petzl Shunt, in Colorado, which they intentionally place into the stream of commerce, in Colorado, by manufacturing and selling through Petzl distributors to retailers such as Banana Fingers and REI, in Colorado.  *See id.* at ¶¶ 20, 24-26.  The Petzl Shunt is the very same product which is at issue in this action and in the related *Faulhaber Case*.  Regardless of the retail *sales* channel that resulted in the Petzl Shunt arriving into the hands of Plaintiff, these Defendants are liable for the end result consequential from being the manufacturer of the Shunt, their product's failure, and the failure to reasonably warn customers in Colorado, such as Mr. Stuart.

Trevor Stuart is a Colorado resident who purchased a Petzl Shunt and used it as a fall arrestor when top rope solo climbing, a type of rock climbing wherein a climber self-belays, or self-lines, instead of having a partner belay.  *See id.* and at ¶¶ 10.  He bought the Petzl Shunt after performing significant research about which safety devices to use for top rope solo activities.  *See id.* at ¶¶ 3, 117, 206.  Through his research, Stuart found that top rope solo climbers regularly use fall arrestors like the Petzl Shunt to self-belay because the arrestor is intended to clamp onto the rope when a climber falls from the rock face.  To effectively perform, the fall arrestor must not separate from the rope under any circumstance, and certainly not under foreseeable and known circumstances. *See id.* at ¶ 5.  Separation from the rope means the climber falls from the sky and may experience death or serious bodily harm.  *See id.*

As described in the Amended Complaint, Mr. Stuart used the Petzl Shunt for self-belaying as demonstrated by numerous online instructional videos from popular climbers and informational products produced by Petzl, which Petzl had actual knowledge of and benefitted from.  On

3

November 30, 2021, Stuart fell while he was climbing at Lower Meadow of the New River Gorge near the Kevin Ritchie Bridge on U.S. 19 in Fayette County, W.V.  Unfortunately, Stuart's Petzl Shunt failed to arrest his fall and completely separated from the rope without warning.  Because the Petzl Shunt failed to arrest his fall, Mr. Stuart hit the ground from a height of over sixty (60) feet, suffering serious bodily injuries, and may have died but for the heroic efforts of witnesses to his fall, first responders, and the medical professionals who ultimately treated him.   The Petzl Shunt's failure is the cause of Stuart's injuries.  *See id.* at ¶ 12.

Big Bang owns Petzl America, Inc. *See* Corp. Discl. Statement (#18).  Defendant, Petzl Distribution represents to customers within Colorado that it is a limited liability company with its headquarters at the same location in ZI Crolles, Cidex 105 A, 29820 Crolles, France.  *See* Doc. No. 12 at ¶ 12.  Defendant, Petzl America, Inc., is a corporation organized under the laws of the State of Utah, with its principal place of business located at 2929 Decker Lake Dr., West Valley City, Utah.  *See id.* at ¶¶ 13-14.   Petzl America also publicly represents to customers within Colorado that it is engaged in "*Sporting Goods Manufacturing* [2]."

In addition to common ownership and control, each of these Petzl entities also maintain a common website at www.petzl.com and are owned and controlled as a "family business" by Paul Petzl as their president.[3]   Mr. Petzl is also the sole Director of Petzl America, Inc.  *See* Doc. No. 19-1 (Utah Secretary of State Filing by Petzl).  Consequently, Mr. Petzl controls all Defendants.  In addition to common ownership and control, these entities also use a common email domain for communications purposes, @petzl.com.  Defendants also use common social media accounts to advertise and market their products around the world, and in Colorado, and to communicate with

---

[2] https://www.linkedin.com/company/petzl-america/

[3] https://www.petzl.com/brand/s/Family-Ownership?language=en_US

their actual and potential customers on You Tube at youtu.be/b30Hb7JQv_Y, on Instagram as petzl_official, and on Twitter @Petzl.  Defendants commonly communicate with their customers via these social media platforms and direct customers around the world and within Colorado to their common Petzl website at www.petzl.com and email account at info@petzl.com.

There is little doubt to customers around the world that Petzl advertises itself to simply be Petzl, a manufacturer and seller of outdoor sporting goods.  Those outdoor sporting goods include the Petzl Shunt, which is at issue in this action and in the related case – and which harmed Colorado residents who purchased it in Colorado when it failed as personal protective equipment ("PPE") without warning, let alone reasonable warning.  There also seems to be little doubt that each of the captioned Defendants are Petzl, and each can be held liable under Colorado law for placing a defective product, inherently unsafe for any use, without reasonable warnings, into the stream of interstate commerce and in Colorado.  Such defective products include the Petzl Shunt, the precise product which nearly killed Colorado residents Messrs. Faulhaber and Stuart.  Plaintiff has pled this, and Defendants are on notice of it.  *See id.* at ¶¶ 14-15; ¶¶ 21-25.

Defendants have now filed the required corporate disclosure statements in this action (Doc. No. 18) and in the Related Case, identifying Big Bang as the owner of Petzl America, Inc., a Utah company.  Thus, pursuant to Utah Code, Big Bang is statutorily deemed to be in "control" of Petzl.  Utah Code § 16-10a-102 provides, in Subsection (9), that "*Control* or a *controlling interest* means the direct or indirect possession of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting shares, by contract, or otherwise."  In the Directors and Officers section of the Utah Code, Utah Code Ann. § 16-10a-840(5)(a), Utah law provides that "For purposes of this Subsection (5) and notwithstanding Section 16-10a-102, 'control' means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of the corporation whether through the ownership of

voting stock, by contract, or otherwise." Pursuant to the "Business Combinations" section of the Utah corporate code, Utah Code Ann. § 16-10a-1802, Subsection (8)(a) provides that "'Control,' including the terms 'controlling,' 'controlled by,' and 'under common control with,' means the same as that term is defined in Section 16-10a-102. (b) A person's beneficial ownership of 10% or more of a corporation's outstanding voting stock creates a presumption that the person has control of the corporation." Here, Big Bang is Petzl America, Inc., and vice versa, while also being Big Bang's agent and alter ego within the United States. Big Bang, Petzl Distribution, and Petzl America, Inc., are also *the manufacturer* under C.R.S. § 13-21-401.

Plaintiff seeks recovery for False Representation, False Designation, Civil Conspiracy, violations of C.R.S. § 18-17-101, *et. seq*, under Strict Liability, for Failure to Warn, Negligence, Negligent Misrepresentation, Fraudulent Concealment, Breach of Implied and Express Warranties, Unfair or and Deceptive Trade Practices. In response, Petzl now asserts no connection with the subject product arguing that the complaint should be dismissed because (1) there is no personal jurisdiction, and (2) the complaint fails to state a case upon which relief can be granted as Stuart "sued the wrong Defendant." These are the matters before the Court.

## II. LEGAL STANDARD

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014); *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The Colorado long-arm statute, C.R.S. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See*

*Care, LLC*, 21 F.4th 1216, 1220 (10th Cir. 2021); *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). It is well settled that personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). It is also fairly well settled that minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. Where general jurisdiction is asserted over a nonresident defendant who has not consented to suit in the forum, minimum contacts exist if the plaintiff demonstrates that the defendant maintains "continuous and systematic general business contacts" in the state. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

The Court has specific jurisdiction if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017). That is, "[a] plaintiff's injury must 'arise out of or relate to' the defendant's forum contacts." *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1284 (10th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)); *see also Hood*, 21 F.4th at 1221-22. In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)). The "common formulation of the rule demands that the suit 'arise out of or relate to the defendant's contacts with the forum.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (quoting *Bristol-Myers*, 137 S. Ct. at 1780).

7

This rule does not require "proof of causation" between "a plaintiff's suit and a defendant's activities." *Id.* "Specific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078.

### III.  ARGUMENT

As a threshold matter, Petzl America Inc., has consented to suit in the District of Colorado in the Related *Faulhaber* case.  It also invited this action to be filed in Colorado for its own convenience during many conferrals between counsel[4].  Thus, this Court's exercise of general jurisdiction has been satisfied with respect to the manufacture of the Petzl Shunt by Petzl America, Inc.  The Court also has general jurisdiction over Petzl America, Inc., because it is a manufacturer of the Petzl Shunt, the same product that nearly killed Mr. Faulhaber in the Related Case and Mr. Stuart that was placed into Colorado's stream of commerce through continuous and systematic contacts.

Additionally, even if one were to assume *arguendo* that Petzl America, Inc. did not consent to general jurisdiction in *Faulhaber*, or waive the argument when it invited suit to be filed in Colorado, and even assuming again that it does not have systemic and continuous contacts with Colorado (which it does), the Court has specific jurisdiction as well.  *See id.* ("Specific jurisdiction […] is premised on something of a *quid pro quo:* in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.") internal quotations omitted.  Here, Petzl has

---

[4] One example is that Petzl America's counsel wrote the undersigned on November 15, 2022: "I would be surprised if you file the Stuart case anywhere other than Colorado federal court considering the class action allegations you made in the Faulhaber case suggesting that the Stuart case also belongs in that Court and as part of the class action."

clearly benefited from Colorado and continues to sponsor climbing events in Colorado, a state with a prolific climbing community. The Related Case is here, Plaintiff is a resident of Colorado, a large part of Petzl's business is in Colorado, and Constitutional Due Process is satisfied by the exercise of this Court's specific jurisdiction. As in the Supreme Court's most recent holding on the issue, *Ford Motor Co.,* Mr. Stuart "brought suit in the most natural State — based on an 'affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that t[ook] place' there." *Ford Motor Co., supra.,* at 1031 (quoting *Bristol-Myers*, 137 U.S. at 1779-80).

Petzl attempts to stimulate confusion by throwing a retailer under the proverbial bus, *e.g.* one of their many e-commerce retailers (Banana Fingers), which was also a *seller* of the Petzl-Shunt that was delivered to Stuart in Colorado. *See* C.R.S. § 13-21-401(3). However, the Petzl Defendants are each – not only *the manufacturer* of the Petzl Shunt by definition – they are also a *seller* which "means any individual or entity, including a manufacturer, wholesaler, distributor, or retailer, who is engaged in the business of selling or leasing any product for resale, use, or consumption." *Id.* These Defendants, particularly Petzl America, Inc., are responsible for the Petzl Shunt being on store shelves, in retail and in e-commerce, in Colorado today. The fact that Banana Fingers was a seller does not relieve Petzl of liability for defective products such as the Petzl Shunt which it intentionally manufactures and places into the stream of commerce in Colorado. While Banana Fingers could be liable for the Shunt as well (as could REI), they are not *the manufacturer.* The Defense's contention that this Court lacks personal jurisdiction over it and that Plaintiff has not plausibly plead his claims is spurious. Petzl's motion to dismiss presents rank red herring arguments based on omissions of predicate facts.[5] This Court has both general and

---

[5] *Kouzmanoff v. Unum Life Ins. Co. of Am.*, 374 F. Supp. 3d 1076, 1081 (D. Colo. 2019) (reminding counsel of the duty of candor when selectively using material in a brief) *citing Thomas v. Chester*,

specific jurisdiction over Plaintiff's claims and these Defendant-manufacturers of a defective product that they failed to reasonably warn Plaintiff about.

    **A.**    ***Petzl America, Inc. is a proper party.***

Petzl America, Inc. is a manufacturer and a seller of the Petzl Shunt under Colorado Law, the same Petzl Shunt which Mr. Stuart used regardless of the sales channel that ultimately put Petzl's product onto his harness, nearly fatally. In *Marandola v. Pueblo Suzuki, Inc.* it was affirmed that the innocent seller statute prohibits a product liability action "against any seller of a product unless said seller is also the manufacturer of said product.. . . ." *Marandola v. Pueblo Suzuki, Inc*., Civil Action No. 1:20-cv-02113-RM-KLM, 2022 U.S. Dist. LEXIS 45178, at *12 (D. Colo. Jan. 28, 2022) *citing* C.R.S. § 13-21-402(1). However, Petzl represents itself, as Stuart avers, to be both. There is also as statutory exception applicable when jurisdiction cannot be obtained over the manufacturer of a product, in which case "the manufacturer's principal distributor or seller over whom jurisdiction can be obtained shall be deemed the manufacturer." *Id*. *citing* § 13-21-402(2).

Petzl America, Inc., now appears to claim no connection to the Petzl Shunt because Mr. Stuart bought it on-line through an e-commerce sales channel even though Petzl America, Inc. is (i) owned and controlled by Big Bang, (ii) controlled by Paul Petzl as its sole Director in the U.S., (iii) is the manufacturer of the Petzl Shunt by statutory definition, and (iv) is likely also a seller of the Petzl Shunt as a distributor that is responsible for the very same product being on Colorado shelves today, virtually, and in multi-channel brick and mortar stores like REI. Petzl is Petzl; the

---

561 F. App'x 656, 657 (10th Cir. 2014). Curiously, Defendant still does not tell the Court which Petzl entity actually made and distributed the Stuart or the Faulhaber Shunts even though that can easily be determined by the product's serial number, which were long ago provided to the defense more than a year ago which was requested as recently as March 27, 2023. *See* <u>Exhibit 1</u> (email chain). Defendants have not meaningfully responded to the request for information in <u>Exhibit 1</u>.

manufacturer and seller of the Petzl Shunt to a Colorado resident as defined by Colorado statute, the same product that nearly killed Messrs. Faulhaber and Stuart. Stuart has plainly pled that the Defendants all intentionally, systemically, and profitably conduct business as "Petzl" in Colorado. *See id.* at ¶¶ 20, 24-26.

Moreover, pursuant to Utah Code, Defendant Petzl America, Inc., is the *de jure* agent within the United States for Petzl (*i.e.*, Big Bang Corp and its closely related and controlled family businesses). Petzl America, Inc. is responsible for the marketing and sales functions of Petzl within the United States and Colorado, including the marketing and sales functions that were directed at Plaintiff who purchased the Petzl Shunt through e-commerce in Colorado. Petzl America, Inc. also admits to being a "manufacturer" of sporting goods on LinkedIn, and it should be estopped from denying it now. Further, Big Bang is the sole owner of Petzl America, Inc. and Paul Petzl is the company's sole Director. Thus, pursuant to Utah Code, Big Bang is statutorily deemed to be in "control" of Petzl. Therefore, Petzl America is Big Bang's Agent and the manufacturer of the Petzl Shunt in the United States and in Colorado and is therefore properly before this Court.

At this stage Plaintiff also does not have to prove a lack of corporate formalities, even though there clearly are many. For example, as noted in *Warad West, LLC v. Sorin CRM USA Inc.*:

> From a personal jurisdiction standpoint, questions such as whether corporate formalities would perpetrate a fraud seem to have little relevance. The ultimate jurisdictional question is whether the subsidiary is 'doing the business of the parent.'

119 F. Supp. 3d 1294, 1298 (D. Colo. 2015) *citing Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1364 (10th Cir. 1974). Consequently, "the truly relevant inquiry is into 'facts concerning the amount of control exercised by the corporate parent over it subsidiary.'" *Id. quoting SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F. Supp. 2d 1161, 1166 (D. Colo. 2003). Here, there is no doubt that Petzl America, Inc., is controlled solely and exclusively as a family business by Big

11

Bang and by Paul Petzl, its sole director. This is all published on Petzl's global website, it was intentionally filed with the Utah Secretary of State, and in the corporate disclosure statement, which Defendant finally filed into this action, and the *Faulhaber* case, and must be admitted by Petzl. Companies conducting business through their subsidiaries can qualify as transacting business in a state, provided the parent exercises sufficient control over the subsidiary. *Pro Axess, Inc. v. Orlux Distribution, Inc.,* 428 F.3d 1270, 1278 (10th Cir. 2005) *citing Curtis Publ'g Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir.1962) ("[A] wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent… .")). This is precisely the case here and as Utah Code and Colorado law firmly establish, Big Bang is in total control of Petzl America, Inc., and the web of Petzl companies manufacturing and selling products around the world, in interstate commerce, and in Colorado.

Petzl clearly targeted Colorado for the sales of its products, including the Petzl Shunt. For example, not only are Petzl products offered for sale in dozens of retail locations throughout Colorado, and in e-commerce: (i) Petzl appears to have employees working for it in Colorado who are Colorado residents on its website with job titles such as "Petzl's Rocky Mountain Sales and Technical Representative" and "Athlete "; (ii) Petzl promotes its sponsorship of climbing festivals in Colorado[6], and (iii) it advertises and promotes Colorado retailers on their common web-site. As the Supreme Court outlined in *Asahi Metal Industry Co., v. Superior Court of Cal.,Solano County*, if the defendant serves the market "in the forum State, for example, designing the product for the market in the forum State, . . . or [as herein] marketing the product through a distributor who has agreed to serve as the sales agent in the forum State," the contacts are sufficient, personal jurisdiction is proper. 480 U.S. 102, 107 S. Ct. 1026, 1032, 94 L. Ed. 2d 92 (1987). Stated plainly

---

[6] https://ourayicepark.com/ouray-ice-festival

by the Tenth Circuit in *Fidelity & Casualty Co. v. Philadelphia Resins Corp*., "if a defendant's product comes into the forum state as a result of a deliberate, although perhaps indirect, effort of the defendant to serve the forum state's market, then that defendant is subject to jurisdiction there." 766 F.2d 440, 446 (10th Cir. 1985). Here, because Big Bang acted purposefully through Petzl to avail itself of the Colorado market, it and the Petzl web of companies, are properly hailed into court in Colorado.

The proper inquiry is whether Petzl has sufficient minimum contacts with Colorado so that the maintenance of the action does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945).[7]  As noted in *Dernick*, *Old Republic Ins. Co. v. Continental Motors, Inc*., 877 F.3d 895, 905 (10th Cir. 2017), the court set forth three "frameworks" to assist in determining whether a defendant had purposefully availed itself of the forum: (i) by maintaining continuing relationships with forum state residents (e.g. by entering into continuing contractual relationships with forum state residents); (ii) by deliberately exploiting the market in the forum state; and (iii) by engaging in intentional conduct that causes harmful effects in the forum state. The Due Process clause is satisfied when the defendant "purposefully established minimum contacts within" Colorado, such that the assertion of jurisdiction over it "would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *see also Parocha v. Parocha*, 418 P.3d 523, 529 (Colo. 2018) (holding abusive phone calls from out-of-state person to a person in the State of Colorado sufficient to establish jurisdiction to enter permanent protection order against out-of-state Defendant with no other connection to the state).

13

And, plainly, herein, Stuart has pled such. *See e.g.* Doc. 12, ¶¶ 10, 14, 20, 22, 24, 25, 26, 37, 99, 119, 122, 173, 206, 218, 221, 240, 249, 273.

**B.** *Stuart's CCPA Claim(s) are Proper.*

This Court has already considered the merits and its analysis will not be duplicated here for efficiency and since the Court rejected them in the *Faulhaber* case[8] with respect to material omissions. The same analysis applies to the *Stuart* CCPA claims. As to the false representation theory, the Court in *Faulhaber* determined specific times, places and dates were required to sustain them and that such was lacking therein. In this, *Stuart* matter, the specific false designation of origin has been added which, respectfully, is even more specific to withstand the same scrutiny following the addition of these facts and with respect to false advertising. *See* ¶¶ 196-198, 202, 204, 207, 210, 217.

**C.** *Stuart's COCCA Claims are Proper.*

*Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1136, n.4 (D. Colo. 2013) does not warrant dismissal of Mr. Stuart's COCA claim. Mr. Stuart has plainly pled the enterprise to be the Defendants acting in combination. *See e.g.* ¶¶ 204, 213, and 217. Moreover, Plaintiff has properly pled at least two predicate acts of mail fraud and/or wire fraud in violation of 18 U.S.C. §§ 1341,1343 in the form of their recognized material omissions, (supra), and in the marketing and distribution of the Shunt. *See e.g. id. at* ¶¶ 29, 30, 87, 99, 105, 106, 134, 143, 147, and ¶¶ 14, 202, 211, 213.

**D.** *Stuart's Express Warranty Claim is Proper.*

*Oja v. Howmedica, Inc.,* 111 F.3d 782 (10th Cir. 1997) does not support dismissal of this claim. In *Oja,* the Court affirmed that federal law did not preempt plaintiff's failure to warn claim

---

[8] *Faulhaber,* 22-cv-00102-GPG-SKC, Doc. No. 55, pg. 10-15.

and reversed a directed verdict for defendant on a strict liability claim.  *Oja* does not stand for the proposition that Plaintiff's express warranty claim is inadequately pled, in fact, it does not even address an "express warranty" claim.   Here, Plaintiff has pled enough facts for a reasonable person to conclude the Shunt was designed to be a fall arrestor, expressly warranted as such, and when called upon to stop Stuart's fall, it failed. *See e.g*. Doc. 12, ¶¶ 3-5, 10-25, 112, 117, 127, 142, etc.  In fact, even today a Google search by the undersigned reveals ad words for "top rope solo" and advertisements for the Petzl Shunt's use as an "ascender."  In spite of this, Petzl continues to refuse to clearly warn that a climber's rope can detach from the device during a routine fall and while top rope soloing, or when using the Shunt as an "ascender", even though it has actual knowledge that climbers such as Plaintiff fell from the sky.

### E. *Stuart's Derivative Claim of Civil Conspiracy is Proper.*

Defendants also mistakenly rely on *Montgomery v. City of Ardmore*, 365 F.3d 926 (10th Cir. 2004) – a Civil Rights case brought under § 1983.   Here, Plaintiff has pled sufficient facts to support a plausible claim for relief.  *See Jet Courier Serv., Inc. v. Mulei,* 771 P.2d 486, 502 (Colo. 1989).  For example, Stuart has pled a combination of three Defendants acting in combination (¶¶ 204, 213, and 217), to fraudulently market and sell a defective product, (¶¶ 3, 5, 10, 12, 14-15, 21-25 117, 204,  206, 207, 251, 253, 255, 282, 283, 285, 287, 289, and 29), through the use of the mail, the internet, and video promotions (¶¶ 29, 30, 87, 99, 105, 106, 134, 143, 147, 14, 202, 211, 213), and that Stuart was injured as a result thereof (¶¶ 142, 161).   Mr. Stuart has plausibly pled civil conspiracy.

Finally, Plaintiff will respectfully move for jurisdictional discovery separate from this Response in order to avoid combining a response with an affirmative motion.

WHEREFORE, this Court should Deny Defendant's motion to dismiss.

Dated: May 15, 2023.

15

>
> Respectfully submitted,
>
> M<sup>c</sup>Leod | Brunger PLLC
>
> By: */s/ Scott D. M<sup>c</sup>Leod*
> Scott D. M<sup>c</sup>Leod, Esq.
> Joseph A. O'Keefe, Esq.
> 10375 Park Meadows Drive, Ste. 260
> Lone Tree, CO 80124
> (720) 443-6600
> smcleod@mcleodbrunger.com
> jokeefe@mcleodbrunger.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on Monday, May 15, 2023, a true and correct copy of the foregoing was electronically filed and served via CM/ECF, addressed to the following:

Jordan Lipp
Childs McCune LLC
821 17th Street, Suite 500
Denver, CO  80202
Telephone: (303) 296-7300
Facsimile: (720) 625-3637
jlipp@childsmccune.com
*Attorneys for Defendant Petzl America, Inc.*

                                                                                            */s/Keri A. Roberts*