IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-00595-CNS-SKC

TREVOR STUART,

    Plaintiff,

v.

PETZL AMERICA, INC.,
PETZL DISTRIBUTION, and
BIG BANG CORPORATION,

    Defendants.

# ORDER

This matter comes before the Court on Defendant Petzl America, Inc.'s ("Petzl's") Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, Failure to State a Claim (ECF No. 16). For the following reasons, the Court GRANTS the motion on jurisdictional grounds and dismisses Petzl from the action.

## I. BACKGROUND[1]

As early as 1982, Petzl began manufacturing safety devices for rock climbers called "shunts" (ECF No. 12, ¶ 39). Retailers advertised Petzl's shunt (the "Shunt") for use in self-belaying, a form of solo rock climbing (*see id.*, ¶ 40).

---

[1] The Court gleans the following facts from the well-pleaded allegations in Plaintiff's First Amended Complaint and Jury Demand (ECF No. 12).

1

In 2001, Lyon Equipment Ltd., a British company, was commissioned by the Health and Safety Executive, a United Kingdom governmental agency, to investigate devices used for rock climbing, including the Shunt (ECF No. 12, ¶ 46). After conducting its investigation, the company concluded that the Shunt had several shortfalls, including the Shunt's potential safety failures when "only one rope is used" in rock climbing (*id.*, ¶¶ 52, 55). The Shunt failed "every minimum working strength test" the company conducted during its safety investigation (*id.*, ¶ 57). After this investigation, including a safety test conducted by the International Rope Access Trade Association, and other incident reports regarding the Shunt's safety effectiveness in arresting climbers' falls, Petzl devised more specific guidance on how to use the Shunt (*see id.*, ¶¶ 62–77).

In 2012, Petzl was "still specifically indicat[ing]" the use of the Shunt for self-belaying (ECF No. 12, ¶ 79). At some point, Petzl stopped providing instructions for using the Shunt for self-belaying in its technical manuals (*id.*, ¶ 80). However, nowhere in the Shunt's technical manuals did Petzl specify that climbers should not use the Shunt for self-belaying due to any of its documented shortfalls (*id.*, ¶¶ 81–84). Currently, Petzl markets the Shunt as "purely a sport device" for use in traditional two-person belaying (*id.*, ¶ 85).

Petzl remains aware that the Shunt is commonly used for self-belaying in the rock climbing community (*see* ECF No. 12, ¶¶ 31, 59). For instance, various online reviews, social media posts, and posts on online climbing forums have described using the Shunt for top-rope solo climbing (*see id.*, ¶¶ 28–30, 102, 109, 147–49, 152). One "Petzl-sponsored climber and author" has expressly recommended the Shunt as one of the best devices for self-belaying, noting that the Shunt has been used for decades for self-belaying, and was previously recommended by Petzl for this purpose (*id.*, ¶ 104). Conversely, at least one "rope solo expert" has demonstrated how the

Shunt may "easily" detach from a climber's rope while self-belaying, rendering use of the device for this purpose "very dangerous" (*id.*, ¶¶ 105–06, 144–46). However, Petzl has never expressly or unambiguously warned climbers against using the Shunt for self-belaying (*see id.*, ¶ 99, 110).

After performing extensive research to find a suitable fall arrestor device, Trevor Stuart—an experienced rock climber—purchased a Shunt in August 2020 for use in top-rope solo climbing (ECF No. 12, ¶¶ 26, 115–17). Mr. Stuart purchased the Shunt in reliance on Petzl's online "experts, influencers, and marketing," which created the impression among climbers that the device is suitable for top-rope solo climbing (*id.*, ¶ 118). While climbing by himself in West Virginia in November 2021, Mr. Stuart fell at least 60 feet to the ground when the Shunt he used "completely failed" (*id.*, ¶¶ 121, 124). The failure of Mr. Stuart's Shunt was consistent with failures documented in earlier safety reports and investigations regarding the Shunt: his device was likely "subjected to forces in excess of" four kilonewtons, the amount of force Lyon Equipment Ltd. had identified as capable of deforming the Shunt's body, and an amount of force consistent with "normal fall arresting" while self-belaying (*id.*, ¶¶ 52, 142).

As a result of his fall, Mr. Stuart suffered near-fatal and life-altering injuries, including "a laceration to his right arm and kidney, broken bones to the thoracic and cervical spine, a subdural hematoma, and five broken ribs" (ECF No. 12, ¶¶ 125, 153–54). Notably, Mr. Stuart is not the only Colorado resident to have been injured while using the Shunt—as alleged in a related case formerly before this Court, Craig Faulhaber fell and nearly died while climbing with the Shunt in August 2021 (*id.*, ¶ 119). *See Faulhaber v. Petzl America, Inc.*, No. 1:22-cv-00102-GPG-SKC, 2023 WL 1993612, at *2 (D. Colo. Feb. 14, 2023).

Mr. Stuart initiated this action on March 7, 2023 (*see* ECF No. 1), and he filed his Amended Complaint on April 10, 2023 (*see* ECF No. 12). Petzl filed the instant Motion to Dismiss on April 24, 2023 (*see* ECF No. 16). The motion is fully briefed.

## II.  LEGAL STANDARDS

### A.  Fed. R. Civ. P. 12(b)(2)

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether a court has personal jurisdiction over the named parties. The plaintiff bears the burden of establishing personal jurisdiction. *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984). The plaintiff may satisfy this burden by making a *prima facie* showing that personal jurisdiction over the defendant exists. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the well-pleaded allegations of the complaint, the court need look no further. *Id*. The plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Id*. In either event, the court will take the allegations of the complaint as true unless contradicted by the defendant's affidavits, and to the extent that the affidavits contradict allegations in the complaint or opposing affidavits, all disputes will be resolved in the plaintiff's favor. *See Behagen*, 744 F.2d at 733.

### B.  Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

4

A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The pleading standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### III. ANALYSIS

Petzl moves to dismiss on two alternative grounds: (i) under Rule 12(b)(2), the exercise of personal jurisdiction over Petzl in Colorado is improper, and (ii) under Rule 12(b)(6), several of the claims set forth in the Amended Complaint fail to state a claim. For the reasons explained below, the Court grants the motion pursuant to Rule 12(b)(2) and dismisses Petzl America, Inc. from the action. Accordingly, the Court declines to address the pleading sufficiency of Mr. Stuart's claims under Rule 12(b)(6).

**A. Personal Jurisdiction over Petzl America, Inc.**

In the portion of its motion arising under Rule 12(b)(2), Petzl argues that this Court lacks personal jurisdiction over Petzl, a Utah corporation (*see* ECF No. 12, ¶ 13). More specifically, Petzl alleges that unlike the related *Faulhaber* case—in which Petzl has conceded that it is the proper defendant because Petzl distributed Shunts to Colorado retailers, which were then purchased by Colorado class members (*see* ECF No. 26 at 8, n.6)—Mr. Stuart appears to have purchased his Shunt from Banana Fingers Limited, a retailer based in the United Kingdom (*see*

5

ECF No. 16-1). On this basis, Petzl asserts that it "neither designed, manufactured, distributed, nor sold the product used by" Mr. Stuart and, as such, he has sued the wrong defendant in this action (*see* ECF No. 16 at 1–3; *see also* ECF No. 16-3, ¶¶ 5–8).

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show both that jurisdiction is proper under the forum state's long-arm statute and that the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *See Behavior Analyst Certification Bd., Inc. v. Moates*, 22-cv-01247-NRN, 2022 WL 17486792, at *5 (citing *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990)). Colorado's long-arm statute permits the Court to exercise personal jurisdiction to the full extent of the Due Process Clause; therefore, the analysis collapses into a single due process inquiry. *See id.* (citing C.R.S. § 13-1-124(1)).

"The Due Process Clause protects a [defendant's] liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). The analysis of whether the exercise of personal jurisdiction comports with due process is two-fold. *See AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). First, the court looks to "whether the nonresident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980)). Second, the court "consider[s] whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *OMI Holdings, Inc. v.*

*Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 109 (1987)).

The "minimum contacts" standard noted above may be satisfied in either of two ways—general or specific jurisdiction. *See Moates*, 2022 WL 17486792, at *5 (citing *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996)). The Court examines each category of "minimum contacts" in turn.

### 1. General Personal Jurisdiction

General, "all purpose" jurisdiction over a nonresident defendant exists where the defendant's contacts or affiliations with the forum state render it "essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* at 137 (quotation omitted). By contrast, looking to the state(s) in which a corporation "engages in a substantial, continuous, and systematic course of business" is an "unacceptably grasping" means of exercising general jurisdiction over a corporate defendant. *Id.* at 137–38.

This latter, "unacceptably grasping" formulation of general jurisdiction, however, is exactly what Mr. Stuart would have this Court exercise over Petzl. In particular, Mr. Stuart argues that general jurisdiction obtains because, as the Shunt's purported manufacturer, Petzl placed the Shunt "into Colorado's stream of commerce through continuous and systematic contacts" (ECF No. 21 at 8). As the U.S. Supreme Court has repeatedly explained, however, the relevant inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are *so*

7

'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 119 (quoting *Goodyear*, 564 U.S. at 919) (emphasis added). Petzl, as a Utah corporation, is not "essentially at home" in Colorado simply because it sells or distributes its products here.

In the alternative, Mr. Stuart argues that the exercise of general jurisdiction in Colorado is proper because Petzl has both consented to be sued in Colorado in the related *Faulhaber* case and, at some point, counsel for Petzl suggested that the instant matter also be filed in Colorado as a matter of convenience (ECF No. 21 at 8). This argument, too, is unpersuasive. Even assuming that Petzl consented to suit in *Faulhaber*, Petzl would not have done so because it is "essentially at home" here in Colorado—rather, it would have done so based on an "affiliation between the forum and the underlying controversy" (i.e., an "activity or an occurrence that takes place in" Colorado, like the sale or distribution of Shunts to Colorado consumers, that is "therefore subject to [Colorado's] regulation"). *Goodyear*, 564 U.S. at 919. In other words, what Mr. Stuart describes in the *Faulhaber* case is the exercise of specific or "case-linked" jurisdiction in Colorado, not general, "all-purpose" jurisdiction based on Petzl's purportedly "at home" status in Colorado unrelated to the underlying suit. Petzl's "home" connection to Colorado is absent here, precluding the Court's exercise of general jurisdiction over it.

2. *Specific Personal Jurisdiction*

Specific jurisdiction exists when a nonresident defendant: (1) availed themselves of the forum state's laws through "'purposefully direct[ing]' [their] activities at residents of the forum," and (2) when "the litigation results from alleged injuries that 'arise out of or relate to' those

8

activities." *Burger King*, 471 U.S. at 472, 474 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

Here, Petzl argues that the exercise of specific jurisdiction in Colorado is inappropriate because the instant matter does not "arise out of" or "relate to" Petzl's contacts with Colorado. More specifically, according to Petzl, even if Petzl distributes Shunts to Colorado consumers generally, Mr. Stuart purchased *his* Shunt from a UK retailer wholly unrelated to Petzl, meaning that Mr. Stuart's injuries did not "arise out of" Petzl's business activities in Colorado (ECF No. 16 at 7–8). In response, Mr. Stuart argues variously (and in rather opaque fashion) that specific jurisdiction over Petzl obtains because (i) by Colorado statute, Petzl is both the Shunt's manufacturer and seller; (ii) Petzl is the "alter ego" of its co-defendants, Petzl Distribution and Big Bang, two French corporations that were presumably responsible for the Shunt's manufacture and sale in Europe where Mr. Stuart purchased his Shunt; and (iii) Big Bang is Petzl's sole owner, and Petzl serves as Big Bang's "agent" within the United States for purposes of suit (ECF No. 21 at 8–14). None of these reasons is persuasive.

To begin, the Court agrees with Petzl that this action did not "arise out of" Petzl's connection with Colorado. With respect to the origin of the specific Shunt that gave rise to Mr. Stuart's injuries, the Amended Complaint alleges only that "Plaintiff purchased the [Shunt] from one of Petzl's Experts in August 2020, which was delivered to him in Denver, Colorado" (ECF No. 12, ¶ 26). And while the Amended Complaint suggests that Petzl distributes other Shunts to consumers in Colorado (*see id.*, ¶¶ 14, 22, 24–25, 240, 249, 273), the competent evidence put forth

9

by Petzl shows that Mr. Stuart's particular Shunt was not one of them. Instead, Petzl's affidavits[2] show that Mr. Stuart purchased his Shunt from a UK retailer, that Petzl "did not design, manufacture, sell, or distribute the Shunt at issue" in this case, and that Petzl "was not involved in any way with the Shunt that Mr. Stuart purchased and was using at the time of his accident" (ECF No. 16-3, ¶ 8; *see id.*, ¶¶ 5–7). Put more simply, the Court agrees that even if Petzl distributes or sells other Shunts in Colorado, the injurious Shunt in *this* case bears no relation to Petzl's business activities in Colorado. *See Goodyear*, 564 U.S. at 930, n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."); *see also Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 549 (11th Cir. 2019) (finding no personal jurisdiction over aircraft manufacturer in Florida, because although manufacturer conducted business in Florida, injured buyer purchased his aircraft in Virginia, meaning that buyer's injuries did not "arise out of" manufacturer's Florida business activities).

Furthermore, pursuant to Colorado's "innocent seller" statute, an injured consumer may not bring a product liability action against a product's seller unless said seller is also the product's manufacturer. *See* C.R.S. § 13-21-402(1). As set forth above, Petzl has presented competent evidence showing that it was neither the seller nor the manufacturer of the Shunt giving rise to Mr. Stuart's injuries. *See Merkley v. Pittsburgh Corning Corp.*, 910 P.2d 58, 59 (Colo. App. 1995) (a product liability plaintiff "must establish that a particular defendant's product was a substantial contributing cause of his injury") (citation omitted); *accord Yoder v. Honeywell*, 900 F.Supp. 240, 245–46 (D. Colo. 1995) ("Under Colorado statutory law, product liability is imposed on a

---

[2] As noted above, for Rule 12(b)(2) purposes, the allegations in the complaint are taken as true, but only to the extent they are uncontroverted by the defendant's competent evidence. *See Behagen*, 744 F.2d at 733.

'manufacturer' of the product."). Mr. Stuart makes no contrary assertion—either in the Amended Complaint or in any accompanying evidence—that Petzl sold or manufactured the specific device purchased by Mr. Stuart that later caused his injuries.

Finally and in brief, Mr. Stuart's various assertions that specific jurisdiction over Petzl obtains because it is either an "alter-ego" or "agent" of its co-defendants (who direct the Shunt's manufacture and sale in Europe, where Mr. Stuart purchased it) are all unavailing. Even assuming, as Mr. Stuart alleges, that Petzl is wholly owned and controlled by Big Bang (*see* ECF No. 12, ¶ 14), Petzl correctly observes that a parent company's minimum contacts do not suffice to establish personal jurisdiction over its "alter ego" subsidiary (ECF No. 26 at 5). *See Vacation Travel Int'l, Inc. v. Sunchase Beachfront Condo. Owners Ass'n, Inc.*, No. 06-cv-02195-LTB-CBS, 2007 WL 757580, at *5 (D. Colo. Mar. 8, 2007) ("The Tenth Circuit rejects the proposition that because the court has jurisdiction over a parent corporation or dominating individual . . . it has jurisdiction over the alter ego corporation.") (citation omitted); *accord Titan Feeding, LLC v. Corey Cattle Co., LLC*, No. 19-cv-02541-PAB-SKC, 2022 WL 4182458, at *13 (D. Colo. Sept. 13, 2022) (collecting cases). Moreover, Petzl's competent evidence shows that Big Bang is a holding company for which Petzl does not serve as an "agent" for personal jurisdiction purposes (ECF No. 16-3, ¶ 13). *See SGI Air Holdings II LLC v. Novartis Int'l, AG*, 192 F.Supp.2d 1195, 1199 (D. Colo. 2002) ("The relationship of a holding company and the subsidiaries of which the holding company owns stock is not of a nature to support an agency relationship, or consequently, personal jurisdiction[.]"); *accord Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1354–65 (10th Cir. 1974) ("One company's exercise over a second corporation of a controlling influence through stock ownership does not make the second corporation an agent of the first.").

\* \* \*

In light of the foregoing analysis, Mr. Stuart cannot show the "minimum contacts" necessary for the exercise of personal jurisdiction—either general or specific—over Petzl in Colorado. Accordingly, the Court grants Petzl's motion to dismiss the Amended Complaint as to Petzl America, Inc.

**B. Pleading Sufficiency of Claims One, Two, Three, Four, and Twelve**

Because the Court grants Petzl's motion to dismiss on Rule 12(b)(2) jurisdictional grounds, it will not address the alternative portion of Petzl's motion challenging the pleading sufficiency of Mr. Stuart's claims under Rule 12(b)(6).

**IV. CONCLUSION**

Based on the foregoing analysis, the Court ORDERS, pursuant to Fed. R. Civ. P. 12(b)(2), that all claims in the Amended Complaint are DISMISSED WITHOUT PREJUDICE as to Defendant Petzl America, Inc.

DATED this 17th day of August 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge